23-6626(L)
*United States v. Elias*

# In the
# United States Court of Appeals
## For the Second Circuit

———————————

August Term, 2024

(Argued:   February 27, 2025   Decided:   October 8, 2025)

Docket Nos. 23-6626(L), 23-6627(CON)

———————————

UNITED STATES OF AMERICA,

*Appellee,*

–v.–

MATTHEW ELIAS, AKA HEDDIS, LATIFF THOMPSON, AKA LA BANGA,

*Defendants-Appellants,*

SHAMIEK HYTMIAH, AKA SHA-BALLA, CONSTANTIN CHEESE, AKA CONS, DESMOND MURCHISON, AKA DEZ, ANDRE BARNABY, AKA GOONIE DRE, BRANDON DARBY, AKA BARRACK, ANTONIO DAVIS, AKA BIG BLOOD, TYQUAN HENDERSON, AKA GUN PLAY, MICHAEL MILES, AKA MENACE, AVERY MITCHELL, AKA SLAV, NAHJUAN PERRY, AKA NAS, PIERRE RAYMOND, AKA LEEKY, JAMES ROBERSON, AKA LITTLES, SHAWN SILVERA, AKA DUM OUT, SHAMEL SIMPKINS, AKA SHA BANG, RASHAWN SMITH, AKA SHAWN, KIMBERLY THOMPSON, AKA KIMMY, LAWRENCE WOODS, AKA LAZO, KAHMEL GRANT, AKA ORNELLY,

*Defendants.*[*]

———————————

[*]  The Clerk's office is respectfully directed to amend the caption as reflected above.

Defendant-Appellant Matthew Elias appeals from an order of the United States District Court for the Eastern District of New York (Garaufis, *J.*) requiring him to forfeit $10,000 as part of his sentence for participation in a robbery, pursuant to 18 U.S.C. § 981(a)(1)(C). Elias contends the forfeiture order conflicts with the United States Supreme Court's decision in *Honeycutt v. United States*, 581 U.S. 443 (2017), which interpreted a similar statute and limited forfeiture to property tainted by the offense and actually acquired by the defendant.

We think the statute at issue in *Honeycutt* is functionally the same as the statute at issue here, and we apply *Honeycutt*'s holding to 18 U.S.C. § 981(a)(1)(C). In so deciding, we join one side of a growing circuit split. From there, we easily conclude that Elias was ordered to forfeit property that he never actually acquired, which violates *Honeycutt*'s primary holding. We accordingly vacate the forfeiture order entered against Elias.

———————————

Before:     LYNCH, ROBINSON, and NATHAN, *Circuit Judges*.

———————————

DANA REHNQUIST, Assistant United States Attorney (Anthony Bagnuola, Assistant United States Attorney, *on the brief*), *for* Breon Peace, United States Attorney for the Eastern District of New York, Brooklyn, NY, *for Appellee United States of America*.

JEREMY GUTMAN, New York, NY, *for Defendant-Appellant Matthew Elias*.

PAUL SKIP LAISURE, Garden City, NY, *for Defendant-Appellant Latiff Thompson*.

———————————

ROBINSON, *Circuit Judge*:

In September 2017, Defendant-Appellant Matthew Elias drove one of two getaway cars for a group of robbers who stole marijuana, a gun, and about $20,000 cash from a stash house in New York City.   Elias was arrested on the night of the robbery and never received any share of the loot.   After a jury trial in the United States District Court for the Eastern District of New York (Garaufis, *J.*), Elias was convicted of Hobbs Act robbery and ordered to forfeit $10,000—calculated based on a pro rata share of what the robbery's perpetrators took from the stash house. Elias now appeals his forfeiture order,[1] saying it was erroneous in light of the United States Supreme Court's decision in *Honeycutt v. United States*, 581 U.S. 443 (2017).

Considering a different forfeiture statute than the one at issue here, *Honeycutt* limited forfeiture to property tainted by the offense and *actually acquired* by the defendant.   *Id.* at 454.   We think the statute at issue in *Honeycutt* is functionally the same as the statute at issue here, and we apply *Honeycutt's* holding

---

[1] Elias, who was also convicted of possessing a firearm during a crime of violence under 18 U.S.C. § 924(c), makes numerous arguments challenging his conviction and aspects of his sentence other than the forfeiture order.   We resolve those issues, along with all issues raised by Elias's co-Defendant, Appellant Latiff Thompson, in a separate summary order issued at the same time as this opinion.

to 18 U.S.C. § 981(a)(1)(C).   In so concluding, we join the Third, Ninth, and Eleventh Circuits on one side of a growing circuit split on the question, reaching a conclusion at odds with that of the Sixth and Eighth Circuits.   We thus **VACATE** the district court's forfeiture order.   In accordance with the summary order issued simultaneously with this opinion, the judgments against the Defendants-Appellants are otherwise **AFFIRMED IN PART** and **VACATED IN PART**.

## BACKGROUND

### I.   Robbery and Arrest[2]

The facts related to this appeal begin with a tip that Shamiek Hytmiah[3] received about a potential target for a robbery:   a stash house in Queens, New York, rumored to contain roughly $400,000 in cash and a large amount of marijuana.   Hytmiah told his acquaintance, Defendant-Appellant Latiff Thompson about the tip, and Thompson agreed to recruit others to help Hytmiah rob the stash house.

---

[2]   We take these facts from the trial record, as supplemented by the findings of fact made at sentencing.   *See* Fed. R. Crim. P. 32.2(b)(1)(B); *see also* Discussion, Part I.C, *below*.

[3]   Hytmiah is a co-defendant in the underlying district court case, but this opinion will not touch on any issues relating to the government's prosecution of him—he's relevant to this appeal only in his capacity as a witness to (and co-perpetrator of) the robbery.   So to simplify, we don't refer to him as "Defendant Hytmiah."

Late on the night of September 6, 2017, Hytmiah went to a family member's house on Galway Avenue (the "Galway house") in Queens, where he planned the stash house robbery for later that night. Thompson arrived, and—as agreed—brought others with him, including Lawrence Woods, Tyquan Henderson, and Defendant-Appellant Matthew Elias. Two other contacts of Hytmiah's also went to the Galway house that night to plan the robbery: Dion Atkinson and Brandon Darby.[4] Hytmiah explained to the group what he knew about the potential value of the stash house.

Hytmiah, Thompson, Woods, Henderson, Elias, and Darby then left the Galway house to go to the stash house. Hytmiah drove himself and Darby in Hytmiah's blue Nissan Maxima.[5] Elias drove himself, Thompson, Woods, and Henderson in Elias's rental car, a silver Nissan Altima. Woods, Henderson, and Darby broke into the stash house from a second-floor balcony, and, after beating up and restraining the person who was inside, they opened the front door to let Thompson into the stash house. Thompson found a safe and marijuana. Thompson and Darby brought the safe to Hytmiah, who was waiting outside.

---

[4]   Woods, Henderson, and Darby are (like Hytmiah) co-defendants in the same underlying district court case. *See* note 3, *above*.

[5]   Atkinson didn't go to the stash house and instead monitored police radios from the Galway house.

Hytmiah immediately drove with the safe and Darby back to the Galway house. At the Galway house, Hytmiah forced open the safe to discover a gun and roughly $20,000 cash. Meanwhile, Thompson had gone back to Elias's car to look for Woods and Henderson, who weren't there.

Thompson eventually learned Woods and Henderson had left and taken the marijuana to a different house near Sutphin Boulevard in Queens (the "Sutphin house"). After hearing this news from Thompson, Hytmiah drove with Atkinson to the Sutphin house, where he found Thompson, Elias, Woods, and Henderson, and the marijuana taken from the stash house. Hytmiah—suspicious that some members of the group were trying to keep the marijuana for themselves—put the marijuana into a garbage bag and drove back with Atkinson to the Galway house. Thompson, Elias, Woods, and Henderson left the Sutphin house separately to follow Hytmiah in Elias's Altima. But before reaching the Galway house, Elias was pulled over for rolling through a stop sign, and Elias, Thompson, Woods, and Henderson were all arrested during the traffic stop.

All told, by the end of the morning of September 7, 2017, Hytmiah, Darby, and Atkinson had returned to the Galway house with everything that was taken from the stash house that night: a gun and roughly $20,000 cash found in the

safe, as well as roughly forty pounds of marijuana. Everyone else was in police custody.

Hytmiah gave Darby a pound of marijuana and roughly $500.[6] When asked at trial about whether he split up the marijuana or the money with anyone else, Hytmiah testified: "No, I kept everything." Gov't App'x 108:7–8; *see also id.* at 110:19–22 ("Q: Now, of the other people that you've testified about who participated in this stash house robbery, who else did you give either the money or some of the marijuana to? A: Nobody else."). Hytmiah declined later requests from Henderson and Thompson to split either the marijuana or the money, and Hytmiah testified that he sold or gave away all of the remaining marijuana. Elias even asked James Roberson[7] on a phone call from pre-trial detention about when he might see some benefit from the robbery, but Roberson relayed unequivocally that Elias would get "no cut of that s---." Gov't App'x 244 (Gov't Ex. 513 at 0:53–1:08).

---

[6] As for the gun, Hytmiah testified that Darby "probably took it with him." Gov't App'x 108.

[7] Roberson is also a defendant in the underlying district court case because of his involvement in the wider racketeering conspiracy. He was not otherwise involved in the September 2017 stash house robbery.

## II.     Proceedings in the District Court

The government's operative indictment in this case charges seventeen defendants with a wide range of weapons and racketeering charges.   The only count of the indictment relevant here is Count Three, charging Elias with robbery under the Hobbs Act, 18 U.S.C. §§ 1951(a), 2.[8]   The indictment likewise includes criminal forfeiture allegations, stating the government's intention to "seek forfeiture" of "any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offense."   App'x 51. The forfeiture allegations included "substitute forfeiture" allegations—that is, statements of the government's intention to "seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in [each respective] forfeiture allegation."   *Id.* at 52.

Elias proceeded to trial in March 2022, and a jury found him guilty of Hobbs Act robbery.[9]   The lead government witness was Hytmiah, whose testimony was supplemented by law-enforcement witnesses.   The district court sentenced Elias

---

[8]  Count Four of the indictment is relevant to Elias but not to Elias's forfeiture order, which is the only issue we address in this opinion.   *See* note 10, *below*.   Count Four alleged unlawful use of a firearm in violation of 18 U.S.C. §§ 924(c), 2.

[9]  The district court tried Elias together with co-Defendant-Appellant Thompson, who faced the same charges for his involvement in the September 2017 stash house robbery.   As mentioned above, we resolve all of Thompson's appeal issues in a separate summary order.

to a total of 120 months' imprisonment, five years' supervised release, a special

assessment of $200, and a forfeiture judgment in the amount of $10,000.

In relevant part, Elias's forfeiture order reads:

> WHEREAS, on or about March 25, 2022, Matthew Elias, also known as "Heddis" (the "defendant"), was convicted after a jury trial of the lesser-included offense charged in Counts Three and Four of the . . . Superseding Indictment, charging a violation of 18 U.S.C. §§ 195l(a) and 924(c)(l)(A)(i); and

> WHEREAS, the Court has determined that pursuant to 18 U.S.C. § 981(a)(l)(C) and 28 U.S.C. § 2461(c), the defendant must forfeit the amount of ten thousand dollars and zero cents ($10,000.00) (the "Forfeiture Money Judgment"), as any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of the defendant's violation of 18 U.S.C. § 1951(a); and/or substitute assets, pursuant to 21 U.S.C. § 853(p).

> NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

> 1. The defendant shall forfeit to the United States the full amount of the Forfeiture Money Judgment, pursuant to

18 U.S.C. § 98l(a)(l)(C), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c).

Elias App'x 121.[10]   Elias now appeals this forfeiture order, which is the focus of this opinion.

## DISCUSSION

Elias's appeal raises two questions, one legal, and one factual.[11]   First, does a defendant need to personally acquire something before it can be subject to forfeiture under 18 U.S.C. § 981(a)(1)(C) in a criminal proceeding?   We conclude yes.   Second, in light of that conclusion, on the record here, was Elias's forfeiture order entered in error?   Again, we conclude yes.   After an overview of background principles, we take each question in turn.

## I.   Legal Backdrop and Standard of Review

### A.  Forfeiture Generally

Forfeiture is government confiscation of private assets.   *See United States v. Contorinis*, 692 F.3d 136, 146 (2d Cir. 2012).   Forfeiture can happen either in a civil

---

[10]   The forfeiture order does not purport to require Elias to forfeit any property as a result of his § 924(c) conviction, even though the indictment stated the government's intention to "seek forfeiture" of "any firearm or ammunition involved in or used in any knowing violation of [§ 924(c)]."   App'x 50.   We take that omission to mean that the forfeiture order arises only out of Elias's violation of § 1951(a).

[11]   We have jurisdiction to consider this appeal under 28 U.S.C. § 1291.

10

or a criminal proceeding. *See Contorinis*, 692 F.3d at 146; *see also United States v. Bajakajian*, 524 U.S. 321, 332 (1998).

In a civil forfeiture proceeding, the government "brings a civil action against the property itself as an *in rem* proceeding" to seize property tainted by criminal activity.[12] *Contorinis*, 692 F.3d at 146; *see also United States v. Ursery*, 518 U.S. 267, 288–89 (1996).[13] In civil forfeiture, the government may take property connected to criminality, even if the property's current owner or possessor is not guilty of any crime. *See, e.g., Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 664–68, 690 (1974) (holding that Puerto Rico could use a local civil forfeiture statute to seize a boat where marijuana had been found, even when the boat's owner "was neither involved in nor aware of" the contraband brought on board by lessees); *see also Contorinis*, 692 F.3d at 146 (describing a property owner's "culpability" in a civil forfeiture action to be "often irrelevant").

"Criminal forfeitures" on the other hand, "are imposed upon conviction to confiscate assets used in or gained from certain serious crimes." *Kaley v. United*

---

[12] An "*in rem*" proceeding is a proceeding where the property itself is the defendant. *See Action in rem*, Black's Law Dictionary (12th ed. 2024); *Action*, Black's Law Dictionary (12th ed. 2024); *see also, e.g., Waterloo Distilling Corporation v. United States*, 282 U.S. 577, 581 (1931) ("[I]t is the property which is proceeded against, and, by resort to a legal fiction, held guilty and condemned as though it were conscious instead of inanimate and insentient.").

[13] In quotations from caselaw and the parties' briefing, this opinion omits all internal quotation marks, footnotes, and citations, and accepts all alterations, unless otherwise noted.

11

*States*, 571 U.S. 320, 323 (2014); *see also Contorinis*, 692 F.3d at 146 ("Criminal forfeiture focuses on the disgorgement by a defendant of his ill-gotten gains."). Criminal forfeiture works "to ensure that crime does not pay" because it can "punish wrongdoing, deter future illegality, and lessen the economic power of criminal enterprises" all at once.   *Kaley*, 571 U.S. at 323.

Criminal forfeiture is "an additional sanction when imposing [a] sentence on a person convicted of the relevant offense."   *United States v. Peters*, 732 F.3d 93, 98–99 (2d Cir. 2013); *see also Libretti v. United States*, 516 U.S. 29, 39 (1995) (characterizing criminal forfeiture "as an aspect of punishment imposed following conviction"); *Bajakajian*, 524 U.S. at 332 (noting how criminal forfeiture was "part of the punishment" for a felony at common law); 18 U.S.C. § 3554 (providing for orders of forfeiture as a component of a defendant's sentence and judgment in certain cases); Fed. R. Crim. P. 32.2(b)(4) (same).   Because criminal forfeiture is punishment for conduct that led to criminal charges and conviction, "[t]he violation on which the forfeiture is based must be the specific violations of which [a defendant] was convicted, not some other, separate [] violations."   *United States v. Capoccia*, 503 F.3d 103, 116 (2d Cir. 2007).

This makes criminal forfeiture different from restitution, which restores property lost by victims of crimes regardless of whether the perpetrator gained

anything. While forfeiture and restitution are similar, they "serve different purposes—one of remediating a loss, the other of disgorging a gain." *United States v. Bodouva*, 853 F.3d 76, 78 (2d Cir. 2017); *see also Peters*, 732 F.3d at 98 ("Criminal forfeiture . . . is a form of punishment, separate and apart from any restitutive measures imposed during sentencing.").

Criminal forfeiture can be imposed as a decree requiring a convicted defendant to either relinquish specific property connected to the underlying crime, or to be liable for a dollar figure representing the value of specific forfeitable property—"in essence, a general judgment against the defendant." [14]  *United States v. Daugerdas*, 892 F.3d 545, 548–49 (2d Cir. 2018); *see also United States v. Awad*, 598 F.3d 76, 78 (2d Cir. 2010) (permitting "imposition of a money judgment on a defendant who possesses no assets at the time of sentencing"); *Hubbard v. Commissioner of Internal Revenue*, 132 F.4th 437, 441–42 (6th Cir. 2025) (comparing specific-property criminal forfeiture orders with forfeiture money judgments).

With a personal judgment against the defendant—as opposed to for the specific assets connected to the crime—the government can pursue the

---

[14]  These judgments are sometimes called "*in personam*" judgments meaning that they attach to a specific person rather than specific property—conceptually, the opposite of an *in rem* judgment. *See, e.g., Action in personam*, Black's Law Dictionary (12th ed. 2024); *Action*, Black's Law Dictionary (12th ed. 2024).

defendant's innocent assets and wages even if those assets are not available the time of sentencing.  *See Awad*, 598 F.3d at 78; *see also United States v. Hall*, 434 F.3d 42, 59 (1st Cir. 2006) (acknowledging that where a court imposes a general dollar-figure judgment, "the government may seize future assets to satisfy the order").

### B.  Statutory Framework

Criminal forfeiture is a creature of statute, and a court can enter a forfeiture order in a criminal case only if it has statutory authority to do so.  *See, e.g.*, U.S. Sentencing Guidelines ("U.S.S.G.") § 5E1.4 ("Forfeiture is to be imposed upon a convicted defendant as provided by statute."); *see also United States v. Farrell*, 606 F.2d 1341, 1345 (D.C. Cir. 1979) ("Generally, therefore, [proceeds of] contraband has not been forfeited except in cases in which forfeiture was authorized by statute."); *United States v. Charles D. Kaier Co.*, 61 F.2d 160, 162 (3d Cir. 1932) ("The power to condemn or to declare a forfeiture must be found in the statutes[.]"). Criminal forfeiture provisions appear throughout the United States Code and vary widely.  *See* U.S.S.G. § 5E1.4 cmt. background (noting several criminal forfeiture statutes).   We focus on the three statutes the district court relied on when it entered Elias's forfeiture order: 18 U.S.C. § 981, 28 U.S.C. § 2461, and 21 U.S.C. § 853.  *See* Elias App'x 121; *see also* Gov't Br. at 56–63.

14

First up is § 981—specifically, § 981(a)(1)(C)—which states that "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of . . . any offense constituting 'specified unlawful activity' (as defined in [18 U.S.C. § 1956(c)(7)]), or a conspiracy to commit such offense" is "subject to forfeiture to the United States."    18 U.S.C. § 981(a)(1)(C). Importantly, § 981 elsewhere defines the "proceeds" of some offenses, including robbery, to be "property of any kind *obtained* directly or indirectly, *as the result of the commission of the offense* giving rise to forfeiture, and any property traceable thereto." [15]    *Id.* § 981(a)(2)(A) (emphases added).    "[S]pecified unlawful activity," as defined in 18 U.S.C. § 1956(c)(7)(A), includes "any act or activity constituting an offense listed in [18 U.S.C. § 1961(1)]," which includes 18 U.S.C. § 1951, the Hobbs Act robbery statute under which Elias was convicted.    *See* 18 U.S.C. §§ 981(a)(1)(C), 1956(c)(7)(A), 1961(1), 1951.

---

[15] Section 981 gives three definitions for "proceeds," and says that the nature of the offense will dictate which definition to use.    *See* 18 U.S.C. § 981(a)(2)(A)–(C).    We have stated that § 981(a)(2)(A) applies in a case like this one that involves an "inherently unlawful activity" like robbery.    *Contorinis*, 692 F.3d at 145 n.3.    The other definitions of proceeds apply "in cases involving lawful goods or lawful services that are sold or provided in an illegal manner," 18 U.S.C. § 981(a)(2)(B), and "in cases involving fraud in the process of obtaining a loan or extension of credit," *id.* § 981(a)(2)(C).    Those other definitions are not relevant here.

Although 18 U.S.C. § 981 is a *civil* forfeiture statute, a second statute, 28 U.S.C. § 2461, opens the door to a *criminal* forfeiture order in Elias's case.   It says:

> If a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized, the Government may include notice of the forfeiture in the indictment or information pursuant to the Federal Rules of Criminal Procedure. If the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case pursuant to to [sic] the Federal Rules of Criminal Procedure and [18 U.S.C. § 3554].    The procedures in [21 U.S.C. § 853] apply to all stages of a criminal forfeiture proceeding.

28 U.S.C. § 2461(c).   "Section 2461(c) thus authorizes criminal forfeiture as a punishment for any act for which civil forfeiture is authorized, and allows the government to combine criminal conviction and criminal forfeiture in a consolidated proceeding."   *United States v. Razmilovic*, 419 F.3d 134, 136 (2d Cir. 2005); *see Contorinis*, 692 F.3d at 145 n.2.

The third statute, 21 U.S.C. § 853, supplies "[t]he procedures" that "apply to all stages of a criminal forfeiture proceeding."    28 U.S.C. § 2461(c); *see also United States v. Romeo*, 136 F.4th 372, 377 (2d Cir. 2025) (applying § 853 procedures in a criminal case where the government sought forfeiture under 18 U.S.C. § 981 by way of 28 U.S.C. § 2461(c)).   Section 853 "authorizes criminal forfeiture as a

16

punishment for drug crimes," and its procedural provisions set forth "the procedures governing such forfeiture, the forfeitable property, and the forfeiture-related actions that are allowed." *Razmilovic*, 419 F.3d at 136. Those procedural mechanisms include provisional remedies like restraining orders, 21 U.S.C. § 853(e), requirements for third parties asserting claims to property that could be forfeited in a criminal case, *id.* § 853(n), and, as relevant here, detailed instructions describing the circumstances in which a defendant might be required to forfeit "other property . . . up to the value of" the property subject to criminal forfeiture, *id.* § 853(p). *See Romeo*, 136 F.4th at 377 (applying § 853(p) to criminal forfeiture under 18 U.S.C. § 981 and 28 U.S.C. § 2461(c)).

### C. *Review on Appeal*

When forfeiture in a criminal case is challenged on appeal, we review the district court's legal conclusions without deference to its reasoning, and we review its factual findings for clear error. *See, e.g.*, *United States v. Rainford*, 110 F.4th 455, 488 (2d Cir. 2024). "Clear error exists only when we are left with a definite and firm conviction that a mistake has been committed." *In re Grand Jury Subpoenas Dated September 13, 2023*, 128 F.4th 127, 142 (2d Cir. 2025). "[W]here there are two permissible views of the evidence, the factfinder's choice between them cannot be

clearly erroneous." *Leyda v. AlliedSignal, Inc.*, 322 F.3d 199, 208 (2d Cir. 2003) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985)).

When we review the district court's factual findings for clear error, we keep in mind that the district court's task was to "find by a preponderance of the evidence" the "amount of money or property to be forfeited" under the applicable legal standard. *United States v. Kalish*, 626 F.3d 165, 168 (2d Cir. 2010); *see also Capoccia*, 503 F.3d at 116; *Rainford*, 110 F.4th at 488. It may consider "evidence already in the record," including the trial record, as well as "evidence or information presented by the parties at a hearing after the verdict or finding of guilt." *Capoccia*, 503 F.3d at 109-10; *see also* Fed. R. Crim. P. 32.2(b)(1).

## II.  Personal Acquisition and 18 U.S.C. § 981(a)(1)(C)

With that background in mind, we approach our first question:  Does a defendant need to personally acquire something in order to be subject to forfeiture under 18 U.S.C. § 981(a)(1)(C) in a criminal proceeding?  In our view, the answer is yes.

As noted above, § 981 defines the "proceeds" of a robbery subject to forfeiture as "property of any kind *obtained* directly or indirectly, *as the result of the commission of the offense* giving rise to forfeiture, and any property traceable thereto." 18 U.S.C. § 981(a)(2)(A) (emphases added).  But does an individual

defendant "obtain" proceeds under § 981(a)(2)(A) when the defendant's confederates acquire the full measure of the proceeds, and the defendant receives none?

This is an issue we have never squarely decided in a precedential opinion, although at least one published decision suggests that § 981(a)(1)(C) may authorize an order requiring a defendant to forfeit property foreseeably acquired by confederates. *See Contorinis*, 692 F.3d at 147. In our view, the Supreme Court's decision in *Honeycutt* effectively answers the question here by interpreting substantially similar text in another forfeiture provision, 21 U.S.C. § 853(a)(1), to permit only forfeiture of "tainted property acquired or used by the defendant," which does not include property acquired or used by the defendant's co-conspirators. 581 U.S. at 450. The fact that 18 U.S.C. § 981(a)(1)(C) omits any reference to "the person" who obtains tainted property does not materially distinguish this statute from 21 U.S.C. § 853. While § 981(a)(1)(C) is a civil forfeiture statute, here it has been invoked in a criminal proceeding through 28 U.S.C. § 2461(c) and therefore operates as criminal forfeiture statute. Moreover, the *procedures* of § 853 apply to a *criminal* proceeding seeking forfeiture pursuant to § 981(a)(1)(C), including the very provision at issue in *Honeycutt*. We expand on each of these points below.

19

### A.  United States v. Contorinis

We have found no precedential Second Circuit decision squarely approving the theory of forfeiture applied against Elias, though our decision in *Contorinis* strongly suggests that a forfeiture order can include proceeds foreseeably acquired by one's confederates.   692 F.3d at 147.   In *Contorinis*, we vacated a criminal forfeiture order against a portfolio manager at a hedge fund who had been convicted of insider trading.   *Id.* at 139–41, 148.   The portfolio manager "made investment decisions but did not control disbursements of profits," and therefore only his employer—the fund—stood to gain from the insider trading.   *Id.* at 139.

Reviewing the district court's forfeiture order against the portfolio manager, we explained that given the purposes of criminal forfeiture, "the calculation of a forfeiture amount in criminal cases is usually based on the defendant's actual gain."   *Id.* at 146.   But we noted, "This general rule is somewhat modified by the principle that a court may order a defendant to forfeit proceeds *received by others* who participated jointly in the crime, provided the actions generating those proceeds were reasonably foreseeable to the defendant."   *Id.* at 147 (emphasis added).   We posited that the extension of forfeiture to proceeds received by confederates was "based on the view that the proceeds of a crime jointly committed are within the possessory rights of each concerted actor, i.e. are

20

'acquired' jointly by them and distributed according to a joint decision." *Id.* We apparently borrowed those principles from the so-called *Pinkerton* doctrine, which says that "[a] member of a conspiracy is therefore liable for an act [they] agreed to and intended to commit in furtherance of the conspiracy regardless of whether [they] ultimately committed the substantive act." *United States v. Jackson*, 335 F.3d 170, 181 (2d Cir. 2003) (cited in *Contorinis*, 692 F.3d at 147); *see generally Pinkerton v. United States*, 328 U.S. 640, 646–48 (1946). But in *Contorinis*, we also said, "This view does not support an extension to a situation where the proceeds go directly to an innocent third party and are never possessed by the defendant." 692 F.3d at 147. So we vacated the forfeiture order.

*Contorinis* is distinguishable insofar as that case involved the definition of "proceeds" in 18 U.S.C. § 981(a)(2)(B): "the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services." 692 F.3d at 14. But that's a distinction without a difference. We see no *material* distinction between the terms "property . . . obtained" in § 981(a)(2)(A) and "money acquired" in § 981(a)(2)(B), and this Court's broad description of the "general rule" was not grounded in the minutiae of the applicable statutory text. 692 F.3d at 147; *see also id.* at 145 n.3.

21

However, the observation in *Contorinis* that a court may order a defendant to forfeit proceeds foreseeably received by others who participated jointly in the crime was not necessary to our decision in that case.    *Id.* at 147.   We did not there affirm an order requiring a defendant to forfeit proceeds obtained by a co-conspirator; rather, we *vacated* an order requiring a defendant to forfeit proceeds that went to an innocent third party – the defendant's employer's fund – holding in effect that *even if* a defendant could be required to forfeit proceeds obtained by a co-conspirator, the forfeiture in that case went beyond that purported exception to the "general rule" that forfeiture is limited to the defendant's actual gains.

Even if *Contorinis* did not strictly hold that a defendant can be made to forfeit proceeds obtained by co-conspirators, the opinion, at a minimum, strongly suggests that, absent intervening statutory changes or Supreme Court authority, Elias could be required to forfeit the proceeds from this robbery even if he never, directly or indirectly, acquired a penny of the proceeds.[16]

---

[16]  The only case of ours cited as precedent in *Contorinis* is *United States v. Fruchter*, 411 F.3d 377 (2d Cir. 2005).   692 F.3d at 147.   *Fruchter*, however, provides no supporting rationale, and merely cites to a Sixth Circuit case, *United States v. Corrado*, 227 F.3d 543, 554–58 (6th Cir. 2000), in which the principal issue was whether a forfeiture could be based on conduct of which the defendant was acquitted.   411 F.3d at 383–84.

B. *The Impact of Honeycutt*

There *is* intervening Supreme Court authority here: the Supreme Court's decision in *Honeycutt v. United States*. We review that decision in detail and then consider whether its logic applies here. In doing so, we join one side of a circuit split.

i. <u>*Honeycutt v. United States*</u>

*Honeycutt* involved two brothers: Tony Honeycutt, who owned a hardware store, and Terry Honeycutt, who worked as an employee in that store. 581 U.S. at 445. The hardware store sold a water-purification chemical for which the typical lawful purpose required only small amounts. *Id.* at 445–46. Noticing the unusual sales, Terry Honeycutt asked police about whether the chemical could be used to manufacture methamphetamine, and the police confirmed that individuals were using it for that purpose. *Id.* The police also advised Honeycutt to "cease selling it if the sales made Honeycutt uncomfortable." *Id.* The hardware store continued selling the chemical in large amounts. *Id.* at 445. Over the course of three years, Tony Honeycutt's hardware store grossed roughly $400,000 in sales of the chemical, netting $269,751.98 in profits. *Id.* at 446. Terry Honeycutt did not benefit personally from the store profits flowing from these sales; he was merely a salaried employee. *Id.* The government charged both

23

brothers with conspiring to violate and violating federal narcotics laws.   *Id.* at 446. Tony Honeycutt pled guilty, and a jury convicted Terry Honeycutt on most of the charges after trial.   *Id.*

The government requested a forfeiture order under 21 U.S.C. § 853 that would hold each defendant liable for up to "the entire amount" of the store's profits—a legal concept known as joint and several liability.   *Id.* at 446–47; *see also id.* at 447–48 (explaining that under the doctrine of joint and several liability, "if two or more defendants jointly cause harm, each defendant is held liable for the entire amount of the harm; provided, however, that the plaintiff recover only once for the full amount").

The Supreme Court concluded that the text and the structure of § 853 were inconsistent with imposing joint and several liability on Terry Honeycutt for the full amount of the hardware store's profits.   *Id.* at 448–54.   First, the Court considered the three provisions defining the property subject to forfeiture.   *Id.* at 448–49.   Subsection 853(a)(1)—the provision on which the government's forfeiture order relied—limits forfeiture to "property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of" the crime.   *Id.* at 448 (quoting 21 U.S.C. § 853(a)(1)).   Subsection 853(a)(2) restricts forfeiture to "property used, or intended to be used" to facilitate commission of

the crime.  *Id.* (quoting 21 U.S.C. § 853(a)(2)).   And § 853(a)(3), which applies to persons "convicted of engaging in a continuing criminal enterprise," requires forfeiture of the above plus the defendant's interest in any continuing criminal enterprise.  *Id.* at 448–49 (quoting 21 U.S.C. § 853(a)(3)).   The Court observed that all three provisions limited forfeitable property to *tainted* property—a limitation that is inconsistent with joint and several liability, which ordinarily requires a defendant to forfeit "property that was acquired by someone else."  *Id.* at 450.

Plus, subsection 853(a)(1) "limits forfeiture to property the defendant 'obtained as a result of' the crime."  *Id.* at 449.   The Court concluded that when the statute was passed, "obtain" meant "to come into possession of" or to "get or acquire."  *Id.* (citing Random House Dictionary of the English Language 995 (1966)).   The Court concluded, "Neither the dictionary definition nor the common usage of the word 'obtain' supports the conclusion that an individual 'obtains' property that was acquired by someone else."  *Id.* at 450.

The Court also looked to § 853(p), the section of § 853 that deals with "situations where the tainted property itself would fall outside the Government's reach."  *Id.* at 452.   When those circumstances arise, "Congress did not authorize the Government to confiscate substitute property from other defendants or co-conspirators," further belying the possibility of joint and several liability under

§ 853. *Id.* Rather, § 853(p) allows the government to reach "any other property *of the defendant*, up to the value of [forfeitable property defined in § 853(a)]" if "any act or omission" of the defendant caused one of five statutory conditions that would frustrate the government's ability to enforce a forfeiture order. 21 U.S.C. § 853(p)(1)–(2) (emphasis added); *see Honeycutt*, 581 U.S. at 452 *("[Section 853(p)] authorized the Government to confiscate assets only from the defendant who initially acquired the property and who bears responsibility for its dissipation.")*. In doing so, the Court expressly repudiated the view that untainted assets could be reached in any other way under § 853—including, for instance, by applying the *Pinkerton* doctrine to require a defendant to forfeit property obtained by coconspirators. *Honeycutt*, 581 U.S. at 452–53 ("The plain text and structure of § 853 leave no doubt that Congress did not incorporate those background [*Pinkerton*] principles.").

In short, *Honeycutt* held that only "tainted property acquired or used by the defendant" as a result of the underlying crime is forfeitable under § 853(a)(1). *Id.* at 450. And it concluded that under § 853, a defendant may not be held jointly and severally liable for "property that his co-conspirator derived from the crime but that the defendant himself did not acquire." *Id.* at 445.

ii.     Applying *Honeycutt* to 18 U.S.C. § 981(a)(1)(C)

The question here is whether *Honeycutt*'s reasoning applies to forfeitures under 18 U.S.C. § 981.   Our conclusion that it does is supported by (1) a comparison of the texts of 21 U.S.C. § 853(a)(1) and 18 U.S.C. § 981(a)(1)(C), (2) the Supreme Court's recognition in *Honeycutt* that joint and several liability would improperly lead to the forfeiture of untainted property, and (3) the Supreme Court's assessment of 21 U.S.C. § 853(p) in *Honeycutt*.

1.   *Sections 981 and 853*

A comparison of the texts of § 853 and § 981 strongly supports applying *Honeycutt's* reasoning here.   The provision the Supreme Court analyzed in *Honeycutt* required forfeiture of "any property constituting, or derived from, any proceeds the person *obtained, directly or indirectly, as the result of such violation*."   21 U.S.C. § 853(a)(1) (emphasis added).   The statute at issue here provides for forfeiture of any property "which constitutes or is derived from proceeds traceable" to identified crimes, 18 U.S.C. § 981(a)(1)(C), and defines *proceeds* for purposes of this case as "property of any kind *obtained directly or indirectly, as the result of the commission of the offense* giving rise to forfeiture," *id.* § 981(a)(2)(A) (emphasis added).   The Supreme Court's understanding of the meaning of "obtain" in § 853(a)(1) was central to its analysis in *Honeycutt*, and the word

27

"obtain" appears to have the same role in both § 853 and § 981(a)(2)(A). "We normally presume that the same language in related statutes carries a consistent meaning." *United States v. Davis*, 588 U.S. 445, 458 (2019); *see also European Community v. RJR Nabisco, Inc.*, 764 F.3d 129, 147 (2d Cir. 2014) (defining a statutory term in relation to "the texts of other related congressional Acts"), *rev'd on other grounds*, 579 U.S. 325 (2016).

At least two other circuits have reached the same conclusion in precedential opinions. *See United States v. Thompson*, 990 F.3d 680, 689 (9th Cir. 2021) ("We hold that *Honeycutt* does apply to 18 U.S.C. § 981(a)(1)(C). The textual differences between it and 21 U.S.C. § 853 appear to us to be immaterial, in light of the reasoning and language in *Honeycutt*."); *United States v. Gjeli*, 867 F.3d 418, 427 (3d Cir. 2017) ("[A] review of the text and structure of [18 U.S.C. §§ 981(a)(1)(C) and 1963] reveals that they are substantially the same as the one under consideration in *Honeycutt*."); *see also United States v. Carlyle*, 712 F. App'x 862, 864–65 (11th Cir. 2017) (unpublished opinion) (similar); *Peithman v. United States*, 140 S. Ct. 340 (Mem.) (2019) (Sotomayor, J., dissenting from denial of certiorari) ("18 U.S.C. § 981(a)(1)(C) . . . is worded almost identically to 21 U.S.C. § 853(a)(1)").

This conclusion puts us at odds with the Sixth Circuit and the Eighth Circuit, which both reasoned that the "linchpin" of *Honeycutt*'s reasoning was that § 853

28

contained the phrase "*the person* obtained."   *United States v. Sexton*, 894 F.3d 787, 799 (6th Cir. 2018) (emphasis added); *Peithman v. United States*, 917 F.3d 635, 652 (8th Cir. 2019).   Thus, according to those courts, "a material distinction" between § 853 and § 981 "is the lack of a reference to a 'person' in § 981."   *Peithman*, 917 F.3d at 652; *Sexton*, 894 F.3d at 799 ("Unlike § 853(a)(1), 18 U.S.C. § 981(a)(1)(C) does not contain the phrase 'the person obtained.'").

We disagree.   We think that the word "obtain," rather than the word "person," is more important in the logic of *Honeycutt* when we consider 18 U.S.C. § 981 and 21 U.S.C. § 853 in context.   In *Honeycutt*, the statute stated, in relevant part, that forfeiture is limited to "proceeds the person obtained" from the unlawful activity.   21 U.S.C. § 853(a)(1).   In that phrase, "the person obtained" modifies "proceeds" and imposes two requirements.   Namely, the proceeds must have been "obtained" from the crime and, furthermore, they must have been obtained by "the person."   In *Honeycutt*, "obtain" does all the work—because the defendant earned only a fixed salary and thus none of his assets were "obtained" from the crime, those assets were "untainted" and not subject to forfeiture.   581 U.S. at 446, 449.   It did not matter that someone else – Honeycutt's   brother – had obtained proceeds from the crime, and was thus subject to the forfeiture of those proceeds, or if they were no longer available, of "substitute" assets.   Since

Honeycutt himself had never received *any* proceeds of the crime, there was nothing for which his legitimately earned assets could "substitute."

Here, the statute is structured similarly. It provides, in relevant part, that "property . . . subject to forfeiture" includes "property of any kind obtained directly or indirectly, as the result of the commission of the offense." 18 U.S.C. § 981(a)(1)-(2). As in § 853, "obtained . . . as the result of the commission of the offense" modifies "property" and, per *Honeycutt*, requires that the property was "actually acquired" from the offense. *Cf.* 581 U.S. at 454.

The omission of any reference to "the person" in § 981(a)(2)(A) does not suggest that the statute may apply to untainted assets; rather, the omission of "the person" makes sense in light of the fact that § 981 is a civil forfeiture statute, while § 853 is a criminal forfeiture provision.

As explained above, criminal forfeiture punishes the "*person* convicted of the relevant offense." *Peters*, 732 F.3d at 98–99 (2d Cir. 2013) (emphasis added); *Libretti*, 516 U.S. at 39. Thus, criminal forfeiture may be imposed only in relation to a specific defendant's offenses. *See Capoccia*, 503 F.3d at 116 ("The violation on which the forfeiture is based must be the specific violations of which [a defendant] was convicted, not some other, separate [] violations."); *see also* 18 U.S.C. § 3553(a)(1) ("The court, in determining the particular sentence to be imposed,

shall consider [] the nature and circumstances of the offense."); *Molina-Martinez v. United States*, 578 U.S. 189, 200 (2016) ("The sentencing process is particular to each defendant."). Accordingly, § 853 speaks in the active voice and includes "the person," because the proceedings could only ever occur with respect to a specific criminal defendant.

In civil forfeiture, on the other hand, the government prosecutes the property itself, based on its connection to an underlying crime, and the culpability of the owner is "often irrelevant" or unknown. *Contorinis*, 692 F.3d at 146; *cf. also Calero-Toledo*, 416 U.S. at 664–68. Because civil forfeiture focuses on the property's connection to a crime, rather than on the person who is responsible for the crime, it makes sense that in § 981(a)(2)(A) Congress makes no reference to "*the person*" who perpetrated the acts justifying forfeiture. The forfeitable property can be seized and rendered property of the United States regardless of who has it now, or how the current possessor obtained it.

In sum, the text of § 981(a)(2)(A) is functionally the same as the text of the forfeiture statute at issue in *Honeycutt*, 21 U.S.C. § 853(a)(1); the absence of a reference to "the person" in § 981(a)(2)(A) bears little weight in this context, whereas the statute's use of the term "obtain" retains the significance explained in *Honeycutt*.

## 2. *Honeycutt and Untainted Assets*

A second reason *Honeycutt* declined to allow joint and several forfeiture liability is that doing so would allow forfeiture of *untainted* assets.     581 U.S. at 449. It hypothesized a college student who received payments totaling $3,600 for distributing some marijuana as part of a multimillion-dollar marijuana distribution operation.     *Id.*   If that student was subject to forfeiture of the full $3 million proceeds of the conspiracy, all but $3,600 of that money would have to be paid from the student's untainted assets.     *Id.*   The Court concluded, "Joint and several liability would thus represent a departure from § 853(a)'s restriction of forfeiture to tainted property."     *Id.*

Like § 853(a), forfeiture under § 981(a)(1)(C) is limited to tainted property. While civil forfeiture is agnostic as to the culpability of the current possessor, § 981 nonetheless requires that *someone* in the chain of possession have "obtained" the property as the direct or indirect result of the crime.   Thus, an innocent owner who acquires tainted goods from a thief may lose those goods pursuant to § 981.[17] But it does not follow that the converse is true; § 981 does not permit the seizure

---

[17]  Section 981 previously incorporated an "innocent owner" defense, 18 U.S.C. § 981(a)(2) (2000), but that provision was stricken by the Civil Asset Forfeiture Reform Act of 2000, Pub. L. No. 106–185, 114 Stat. 202.

of untainted funds from a guilty owner, or the "substitution" of assets for tainted property that the owner never in fact "obtained."

We held as much in *United States v. Capoccia*, vacating a forfeiture order that required forfeiture of proceeds from an embezzlement scheme that were received *before* the charged period of the embezzlement. 503 F.3d at 110. We emphasized that under § 981(a)(1)(C), "the government is entitled to forfeiture of funds that 'constitute or are derived from proceeds traceable to a violation'" of the underlying crime. *Id.* at 116. This requires that the government "establish[] the *requisite nexus* between" the proceeds to be forfeited and the "conduct" supporting the conviction. *Id.* at 115 (emphasis added); *see also* Fed. R. Crim. P. 32.2(b)(1). And we explained that one purpose of § 2461(c), which makes civilly forfeitable property under § 981 also subject to criminal forfeiture, is to encourage the government "to seek forfeiture through criminal proceedings, *where it would have to link targeted property to a specific criminal conviction.*" *Id.* (emphasis added). Just as joint and several forfeiture liability under § 853(a)(1) would improperly lead to the forfeiture of untainted property, so would requiring an individual to forfeit property under § 981(a)(1)(C) that the individual never received.

### 3. 21 U.S.C. § 853(p)

*Honeycutt*'s analysis of § 853(p) also supports our conclusion that Elias cannot be subject to a substitute assets forfeiture order for proceeds he never received. The Court described § 853(p) as the "the sole provision of § 853 that permits the Government to confiscate property untainted by the crime." *Honeycutt*, 581 U.S. at 451. The way § 853(p) operates, however, was held inconsistent with imposing joint-and-several liability because "Congress did not authorize the Government to confiscate substitute property from other defendants or co-conspirators." *Id.* at 452. Rather, "it authorized the Government to confiscate assets only from the defendant who initially acquired the property and who bears responsibility for its dissipation." *Id.* The Court reasoned that it was inconsistent with "Congress' carefully constructed statutory scheme" to impose joint-and-several liability because untainted assets of one defendant could be used to satisfy a forfeiture judgment attributable to assets that some co-defendant obtained during the course of criminal conduct, which would be an "end run" around the requirements that Congress imposed to be able to do so. *Id.*

That logic squarely applies here as well. Although the substantive forfeiture provision at issue here is 18 U.S.C. § 981(c)(1)(A), the legal authority for the *substitute assets* order is 21 U.S.C. § 853(p), which is applicable to this

34

§ 981(c)(1)(A) forfeiture proceeding by virtue of 28 U.S.C. § 2461(c). To the extent joint and several liability would run afoul of the limitations of § 853(p) in *Honeycutt*, imposing a monetary forfeiture judgment against someone who never acquired any proceeds from the crime would exceed those same limits here. There is "no meaningful difference" in the operation of § 853(p) depending on whether forfeiture arose under § 853 directly or was authorized by some other statute subject to § 853(p) through § 2461(c). *Kalish*, 626 F.3d at 169. Because the only potential authority for a substitute assets order in this case is § 853(p), and because that provision authorizes substitute asset judgments only against persons whose "act or omission" has led to the unavailability of the forfeitable asset, *Honeycutt*, 581 U.S. at 451–52, we see no basis for a substitute asset order here.

The government tries to resist our conclusions here. It first says that *Honeycutt* is limited to only cases where there is a conspiracy charge and true joint-and-several liability, i.e., where any perpetrator could be liable for up to the entire amount of the robbery's proceeds. We don't think the lesson from *Honeycutt* is so narrow. The key lesson from *Honeycutt* is that a defendant cannot be ordered to forfeit property that the defendant never acquired, where the applicable forfeiture statute describes forfeitable property using words implying personal possession like "obtain." Joint and several liability violates that rule in cases

where it cannot be said that jointly liable defendants jointly obtained or acquired the property subject to forfeiture.

In conclusion, the reasoning of *Honeycutt* applies to forfeiture of substitute assets under 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and 21 U.S.C. § 853(p). The distinctions between 981(a)(1)(C) and the statute at issue in *Honeycutt* are too slight for us to cast *Honeycutt* aside. The only property that a district court can order a defendant to forfeit in a criminal case under 18 U.S.C. § 981(a)(1)(C) is "tainted property acquired or used by the defendant" as a result of the crime of conviction. *Honeycutt*, 581 U.S. at 450.

### III. Application to Elias

That leads to the ultimate question in this case: Was Elias's forfeiture order entered in error? The answer, again, is yes.

The district court ordered Elias to forfeit $10,000 as a pro-rata share of the property "constituting, or derived from, proceeds obtained directly or indirectly as a result of the defendant's violation of 18 U.S.C. § 1951(a); and/or (d) substitute assets, pursuant to 21 U.S.C. § 853(p)." Elias App'x 121. The applicable statute here provides for forfeiture of three categories of property: (1) proceeds, meaning property that the defendant obtained or acquired directly or indirectly as the result of the offense, 18 U.S.C. §§ 981(a)(1)(C), 981(a)(2)(A); (2) property "derived from"

36

or "traceable to" those proceeds, *id.*, and (3) property properly substituted under 21 U.S.C. § 853(p).   *See also* Discussion, Part II, *above*.   The $10,000 cash that Elias has been ordered to forfeit fits into none of these categories.

For § 981(a)(1)(C) forfeiture, we limit proceeds to "tainted property acquired or used by the defendant" as a result of the underlying offense.   *Honeycutt*, 581 U.S. at 450.   Personal acquisition of the proceeds by the defendant—and not someone else—is central to the meaning of proceeds.   *Id.*

The evidence leaves no uncertainty about what Elias obtained as the result of the robbery:   Nothing.   Except the $500 and a pound of marijuana that he gave to Darby, Hytmiah "kept everything."   Gov't App'x 108.   Two of the robbery's other perpetrators requested their share, and Hytmiah refused them.   Other than Darby, Hytmiah testified that he shared with "nobody else."   Gov't App'x 110. Confirming that conclusion, Elias asked Roberson on a phone call from pre-trial detention about when some benefit from the robbery might accrue to him, but Roberson relayed unequivocally that Elias would get "no cut of that s---."   Gov't App'x 244 (Gov't Ex. 513 at 0:53–1:08).

We will not saddle Elias with the burden of forfeiting property that a different perpetrator obtained and kept.   In *Honeycutt*, the Supreme Court did not allow Terry Honeycutt to be on the hook for *his brother's* profits.   581 U.S. at 454.

That's because Terry Honeycutt did not obtain or acquire what the court ordered him to forfeit.   So too here.   The district court ordered Elias to forfeit a pro-rata share of what *Hytmiah* obtained and kept.   That order rested on a clearly erroneous factual conclusion about who obtained what.   Because Elias obtained no proceeds as the result of the robbery, we see no theory that would justify a conclusion that $10,000 was derived from or traceable to proceeds.

The government offers one additional theory:   That because *someone* obtained the proceeds and Elias "intended," "expected," and "took affirmative steps" to take his share, then we should affirm his forfeiture order as if he had taken a share of the proceeds.   Gov't Br. 60–62.   We do not need to dwell on that theory because the government does not cite any authority for its position, and there is no way to square the notions of intention, expectation, and affirmative steps with the language of the applicable statute.   *See* 18 U.S.C. §§ 981(a)(1)(C), 981(a)(2)(A).

There is a commonsense distinction between intending or expecting to obtain something, on the one hand, and *actually* obtaining it on the other.   The law of forfeiture recognizes that distinction by making the defendant's "ill-gotten gains" the typical measure of forfeiture.   *Contorinis*, 692 F.3d at 146; *see also Kaley*,

571 U.S. at 323, 327.   That is not the same as the defendant's *intended* or *expected* gains.

## CONCLUSION

For these reasons, we **VACATE** the order of forfeiture entered against Matthew Elias.   As set forth in the summary order filed simultaneously with this opinion, the judgments against the Defendants-Appellants are otherwise **AFFIRMED IN PART** and **VACATED IN PART**, and the case is **REMANDED** to the district court with instructions to strike or revise certain conditions of supervised release as specified in that summary order.